UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARCUS NELSON,

        Plaintiff(s),

v.

QUALITY FOOD CENTERS, INC., and
ROBERT CALLAHAN,

        Defendant(s).

NO. C07-1757MJP

ORDER ON MOTION FOR
SUMMARY JUDGMENT

The above-entitled Court, having received and reviewed:

1. Defendants' Motion for Summary Judgment (Dkt. No. 10)

2. Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 24)

3. Defendants' Reply in Support of Defendants' Motion for Summary Judgment (Dkt. No. 36)

and all attached exhibits and declarations, makes the following ruling:

IT IS ORDERED that the motion is GRANTED, and Plaintiff's claims are ordered DISMISSED with prejudice.

**Background**

Plaintiff has been employed at Defendant Quality Food Centers ("QFC") since 1970 and had worked his way up from stock boy to store manager. Nelson Deposition at 32. He was promoted to store manager in 1994 and named as manager of QFC's Rainier Avenue store in 1995. Id. at 33. In 2000, Plaintiff was transferred to the lower-volume Alderwood store, a move he viewed as unfair but at the time stated did not feel was racially motivated (an opinion he recanted at his deposition; Nelson Dep. at 75-76). At the time of the transfer, the Vice President ("VP") of Store Operations (Heuser) –

**ORDER ON MTN
FOR SUMM JMT - 1**

the man who had promoted Plaintiff initially – told him that he was being transferred because of poor store conditions both observed by Heuser and reported by Plaintiff's last three district managers. Heuser Decl., Ex's A and B. The poor store conditions included a mice infestation problem that the successor-manager (Quintos) attested was the worst he had ever seen. Quintos Decl., ¶ 3. The mice-related damage to store inventory was $30,000. Id. at ¶ 4. Quintos also testified to low employee morale at the Rainier store during Plaintiff's tenure. Id. at ¶ 5.

Defendants present evidence of continued performance problems at the Alderwood store. The internal store auditor reports that the audit results at Plaintiff's store varied from "poor" to "acceptable," but that on one occasion the results were the worst she had ever seen. Dale Decl., ¶ 2. In 2003, an underperforming manager was transferred to the lower-volume Alderwood store and Plaintiff was sent to West Lynnwood in a three-way switch. At that location in 2004, Defendants report six instances of Plaintiff's failure to properly process pay increases, forcing the affected employees to either complain to the Human Resources Department ("HR") or file union grievances. Fenton Decl., ¶ 9.

In 2005, the District 3 managers were evaluated by Quintos (following his promotion to District Manager). Only three managers received "failed to meet expectations" rating – Plaintiff and two others. Quintos Decl., ¶ 9. At his deposition, Plaintiff testified that "[he] was fine" with Quintos' evaluation. Nelson Dep. at 197. Following that performance review, Quintos switched districts with Defendant Callahan. Defendants present testimony that the other two "below expectation" managers were either gone from the company or from management positions within the year. Quintos Decl., ¶ 9; Fenton Decl., ¶¶ 10, 11.

Defendant Callahan reports seeing a series of "merchandising deficiencies" in the West Lynnwood store which he attributed to a failure by the Merchandising Manager to properly use QFC's computer-assisted ordering system. Callahan advised Plaintiff that he considered it Plaintiff's failure

**ORDER ON MTN
FOR SUMM JMT - 2**

that this employee was not trained or held accountable for the results of his lack of training. Callahan Decl., ¶ 3. Callahan testified to continued deficiencies, as did QFC VP Turley and HR Director Fenton. Turley Decl., ¶ 6; Fenton Decl., ¶ 10, Callahan Decl., ¶ 4.

In 2006, Plaintiff received his second "needs improvement" performance evaluation, this time by Defendant Callahan. Callahan Decl., Ex. B. He was rated the lowest of all the store managers in District 3. Fenton Decl, ¶ 12; Turley Decl., ¶ 11. In August, Plaintiff was transferred to the Silver Lake store (the decision had been made earlier in June, then was delayed when Plaintiff was injured and off work until August), switching him with a Caucasian manager, Rod Skolrud (whose performance levels at the Silver Lake score had consistently met expectations; Fenton Decl., ¶ 13). VP Turley states that the transfer to Silver Lake was intended to give Plaintiff a lower-volume, smaller-scale environment where he could address his performance problems. Turley Decl., ¶ 6.

The Silver Lake store was closed at the end of December 2006, an anticipated closure that Plaintiff asserts was known to QFC well before he was transferred there. Plaintiff Memo, p. 3. As a result of the closing, Plaintiff was given two options: take a severance package or be demoted to merchandising manager (an "assistant manager" position) at some other store. Plaintiff chose the demotion. Defendants note that, even if Plaintiff had remained at West Lynnwood, he would have faced the same option because he was the lowest-performing manager in a district which had one manager too many. Turley Decl., ¶ 11; Fenton Decl., ¶ 13.

Plaintiff has no direct evidence of racial animus on the part of Defendant Callahan or any other QFC representative. Although he claims that, but for their fear of reprisal, the other African-American managers would testify to Callahan's racism (Nelson Depo at 42-45; Nelson Decl., ¶ 10), both managers deny Plaintiff's accusations of racial bias on Callahan's part. Berry Decl., ¶ 2; Van Dusen Decl, Ex. F (Berry Dep. at 15); Van Dusen Decl., Ex. E (Webster Dep. at 16-17). Plaintiff's only other evidence concerning Callahan is the testimony of himself and his wife that Callahan was more

**ORDER ON MTN
FOR SUMM JMT - 3**

cool and uncomfortable around the African-American managers than the Caucasian ones. Nelson Decl., ¶ 10; Annie Nelson Dep. at 12-15.

Plaintiff has asserted claims of racial discrimination under RCW 49.60, Title VII of the 1964 Civil Rights Act ("Title VII") and Section 1981 of the Civil Rights Act of 1866 ("§ 1981"). Complaint at ¶¶ 4.1 - 7.4; Dkt. No. 1.

## Discussion

At the outset of his briefing, Plaintiff acknowledges that his claim for punitive damages (which requires proof of "malice or reckless indifference to [Plaintiff's] federally protected rights") is not sustainable, and he withdraws that claim. Although that procedural/tactical decision is ultimately subsumed by the Court's decision to dismiss all of Plaintiff's claims, the Court will not discuss Plaintiff's claim for punitive damages further based on his voluntary dismissal of that aspect of his case.

Turning to Plaintiff's remaining causes of action, the Court employs the traditional "burden shifting" analysis of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), for both the state and federal claims. Plaintiff's initial burden is the establishment of a prima facie case; upon successful accomplishment of that, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for their allegedly discriminatory conduct. If the employer succeeds in articulating a legitimate reason, the presumption of discrimination disappears and Plaintiff must demonstrate that the non-discriminatory reason for the employment action is merely pretextual.

A prima facie case for discrimination requires proof that proof that Plaintiff (1) belongs to a protected class; (2) was demoted; (3) was doing satisfactory work, and (4) was treated less favorably than similarly situated individuals not in the protected class. <u>Surrell v. Calif. Water Svc. Co.</u>, 518 F.3d 1097, 1105-06 (9th Cir. 2008). Defendants concede that Plaintiff can establish the first two elements,

**ORDER ON MTN FOR SUMM JMT - 4**

and argue that he fails to establish the third and fourth (and fails as well to provide any proof of pretext in response to Defendants' non-discriminatory reasons for their actions).

Defendants need point no further than Plaintiff's two substandard performance evaluations to challenge Plaintiff's assertion that he was performing satisfactorily. Additionally there is the testimony of multiple members of QFC management (the District Manager, the HR Director, the VP of Store Operations) that they repeatedly found deficiencies upon visiting Plaintiff's stores. The mice infestation at the Rainier store furnishes another example – although Plaintiff presents evidence that mice are an ongoing problem at many QFC locations (McKagan Decl., Brandt Decl.), the Quintos testimony that the mice problem was the worst he had ever seen and the evidence of $30,000 worth of lost inventory strongly establishes that Plaintiff's under-performance had created an unusually severe situation.

Plaintiff attempts to characterize the performance evaluations as "highly subjective" and counters them with declarations from two West Lynnwood customers about the high levels of customer service and employee morale that they experienced while shopping at that store. Vellat Decl., Martin Decl. In addition to *de minimis* nature of the testimony of two customers, case authority states that customer opinions are not a persuasive counter-argument to the evaluations of business professionals: "None of these [third party] letters, however, came from anyone charged with the direct supervision and evaluation of his overall performance." Grimwood v. Univ. of Puget Sound, 110 Wn.2d 355, 364 (1998). Nor is Plaintiff's opinion of his own performance persuasive or of sufficient weight to defeat summary judgment – an affected employee's "perception of himself. . . is not relevant. It is the perception of the decision-maker which is relevant." Id. at 360; see also Bradley v. Harcourt, Brace and Co., 104 F.3d 267, 270 (9th Cir. 1996) (Plaintiff cannot rely on personal evaluation of his own competence to avoid summary judgment). Plaintiff also presents a declaration from a former QFC manager regarding the satisfactory conditions at the Silver Lake store (Brandt

**ORDER ON MTN
FOR SUMM JMT - 5**

Decl., ¶ 4). Brandt's testimony has some limited probative value and relevance to Plaintiff's overall competence, but (as discussed below) this witness's opinions regarding the situation at the Silver Lake store do nothing to call into question Defendants' judgment or motives concerning Plaintiff's performance at the previous stores under his supervision.

Plaintiff's entire effort to establish the "treated less favorably" element of his proof falls wide of the mark. Plaintiff's briefing on this point is devoted entirely to analyzing his situation vis-a-vis Skolrud, the former Silver Lake manager. It fails in two significant regards.

First of all, the claim that his and Skolrud's evaluations were "almost identical" (Plaintiff Memo, p. 4) is not true – Plaintiff failed to meet expectations in two categories and Skolrud received "meets expectations" or "exceeds expectations" ratings in all categories (Rosen Decl., Ex's 1, 2); Skolrud received an overall "meets expectations" rating and Plaintiff received a "needs improvement." They are not "similarly situated" individuals and what happened to Skolrud is not relevant to Plaintiff's requisite proof. Secondly, as Defendants point out, his performance at Silver Lake was not the cause of his demotion: his previous two years' worth of substandard evaluations were. Even had Plaintiff not been transferred to Silver Lake, with the closing of that store QFC had one too many managers in the district and someone had to go. Their choice to demote the lowest-performing manager in the district was a logical one, and Plaintiff presents no evidence to establish that it was racially-motivated.

Finally and most fatally, if Plaintiff had utilized comparators that were truly "similarly situated," he would have used the other two managers who received the identical "below expectations" rating that he did. However, those managers were no longer employed as managers by QFC within a year of their substandard reviews (one was terminated and the other accepted a demotion; Fenton Decl., ¶ 11). The proof establishes that Plaintiff was actually treated <u>better</u> than similarly situated individuals not in his protected class. Plaintiff has no evidence that similarly situated

**ORDER ON MTN**
**FOR SUMM JMT - 6**

individuals not in the protected class were treated more favorably than he was, and his case founders on this critical element.

Plaintiff's evidence of pretext is likewise insufficient to withstand scrutiny. He devotes a large portion of his briefing to arguing that Defendants' reasons for transferring him to the Silver Lake store (purportedly to give him a lower-volume environment in which to work on his performance issues) were a sham because QFC management knew that the store would be closed by the end of the year. Defendants don't dispute that they knew of the impending closure, but the Court agrees with them that this is not proof of pretext for two reasons.

First, Plaintiff's demotion was unrelated to the Silver Lake transfer. He was simply the lowest-rated manager in a district with a surplus of managers. The Silver Lake closure was independent of his presence there (the decision having been made before he was transferred); the effect of the closure was to decrease the need for store managers by one and someone had to go.

Second, Plaintiff's argues that the rationale of transferring him to Silver Lake to afford him "an opportunity to improve" is a sham because he only had four months to manage at that location. This contention is undercut by two factors: (a) had it not been for Plaintiff's injury, he would have been transferred to Silver Lake in June, giving him six months to work on his performance issues instead of four; and (b) Plaintiff establishes no proof and presents no reasons why four months or six months is not ample time to work on issues such as store condition, inventory control, etc.

Plaintiff's attempts to offer evidence of racial animus on Callahan's part are extremely weak. His own self-serving observations (and those of his wife) regarding Callahan's demeanor are highly subjective. His claim that his opinion of Callahan's racial attitudes is shared by other African-American store managers is flatly contradicted by the direct testimony of the managers themselves. Berry Decl., ¶ 2; Van Dusen Decl, Ex. F (Berry Dep. at 15); Van Dusen Decl., Ex. E (Webster Dep. at 16-17).

**ORDER ON MTN FOR SUMM JMT - 7**

Defendants present proof that both Heuser and Callahan have hired and promoted other African-American employees within the organization (Heuser Decl., ¶¶ 2, 4; Webster Decl. at 15, 19-20), and Plaintiff's evidence is wholly inadequate to overcome the "strong inference" of lack of racial bias arising from the "same actor" doctrine; i.e., that a person accused of discrimination against a protected class member who has hired or promoted persons from that protected class in the past benefits from a "strong inference" (short of an actual presumption, more than a "mere possible conclusion") that there was no discriminatory motive involved in his decision-making process. Coghlan v. American Seafoods Co., LLC, 413 F.3d 1090, 1098 (9th Cir. 2005).

Finally, the Court notes that Plaintiff was rated "below expectations" by two district managers (Quintos and Callahan) and only challenges the motivations of one of them (in fact, he testified that he "was fine" with the substandard evaluation he received from Quintos; Nelson Dep. at 197). The evidence that he was similarly rated by two separate individuals, only one of whom is accused of bias, considerably diminishes the impact of Plaintiff's argument.

**Conclusion**

Defendants have succeeded in establishing that Plaintiff cannot sustain his burden of proof regarding any of his claims of racial discrimination. There are no disputed issues of genuine material fact, and Plaintiff has failed to present evidence which supports either a prima facie case of racial discrimination or his claim that Defendants' proffered reasons for their actions are pretexts for racial discrimination. Defendants will be granted summary judgment on all claims and Plaintiff's action will be dismissed with prejudice.

The clerk is directed to provide copies of this order to all counsel of record.

Dated: January __6___, 2009

_Marsha J. Pechman_
Marsha J. Pechman
U.S. District Judge